OPINION
Appellant, Elisabeth Thut, appeals from the judgment of the Geauga County Court of Common Pleas entered on April 27, 2000. Appellant filed suit against appellees, Bruno Thut ("Bruno"), her former spouse, Kristine Thut[1] ("Kristine"), Bruno's current spouse, and Deidre A. Stebbins ("Ms. Stebbins") on June 21, 1999. Appellant alleged that these parties engaged in fraud and conspiracy to commit fraud to conceal Bruno's ownership interest in two properties during appellant's divorce proceedings. The trial court granted appellees' motion for summary judgment on the grounds appellant's claim was barred by the statute of limitations. The following facts are relevant to a determination of this appeal.
Bruno and Elisabeth Thut were married in 1960. They were divorced on March 5, 1993. In January of 1992, Bruno moved out of the marital residence and into a condominium on Tinkers Lane in Twinsburg, Ohio. Ms. Stebbins lived there. Kristine moved in later.
The condominium was owned by B.E.R.K. Co. During the divorce proceedings, Bruno testified he paid rent to this entity. He did not list this property as a property in which he held an interest. In January of 1992, B.E.R.K. Co. was allegedly owned in its entirety by Ms. Stebbins. In contrast, in April of 1995, when title to this property was transferred, Bruno was listed on the deed as the sole proprietor of B.E.R.K. Co.
Bruno was deposed in conjunction with this lawsuit in January of 2000. He testified he took out a $50,000 loan from Bank One in 1991. He subsequently "gave" $30,000 of this money to Ms. Stebbins for the purchase of the Tinkers Lane condominium, which she acquired in November of 1991. While he disclosed the existence of the loan during the divorce proceedings, he did not disclose that he had given Ms. Stebbins $30,000 for the purpose of purchasing the condominium through B.E.R.K. Co. Bruno testified that he did not acquire the property from Ms. Stebbins (B.E.R.K. Co.) until after the divorce.
In October of 1992, Bruno and Kristine moved into a home on River Glen Road in Aurora, Ohio. According to appellees, this home was purchased by Ms. Stebbins on October 2, 1992. According to appellant, Ms. Stebbins purchased this home on September 17, 1992. Bruno co-signed the mortgage papers on the home. Both agree that on September 22, 1992, Ms. Stebbins executed a quitclaim deed providing for an outright transfer of her interest to Bruno. Thus, according to appellees, a deed was executed granting Bruno full ownership of the property before Ms. Stebbins purchased it. This deed was prepared and witnessed by Attorney David E. Griffiths. However, the deed was not recorded until June 22, 1993, over three months after the final decree of divorce was filed. At his deposition in January 2000, Bruno explained that the quitclaim deed was executed because he had co-signed the mortgage on the property. This deed, he explained, protected his interest in the event Ms. Stebbins died.
Bruno was deposed on two occasions during the divorce proceedings, the first in September 1992, and the second in February 1993. Appellant made inquiries at both depositions about Bruno's ownership of property. At both depositions, Bruno testified that he did not have any financial interest in the Tinkers Lane condominium. At the second deposition, Bruno testified that he did not have a financial or ownership interest in the River Glen Road property.
Additionally, as part of the divorce proceedings, Bruno was required to list all the real estate in which he had an interest. Neither property was listed. The parties ultimately reached an agreement on the division of marital property, which was adopted by the trial court. This agreement included a clause that indicated full disclosure had been made. After the divorce was final, appellant took no further action to investigate Bruno's property interests until 1998.
In 1998, a friend of appellant's was sitting in a restaurant when he overheard a conversation at the next table. During this conversation one person related that a man named Bruno had hidden assets from his ex-wife during the course of divorce proceedings. The friend informed appellant of this conversation. Appellant then investigated the tip. She found the deed from the Tinkers Lane condominium indicating that Bruno was the sole proprietor of B.E.R.K. Co. She also found the quitclaim deed conveying the River Glen Road property to Bruno in September 1992, before the divorce, which was not recorded until June 1993, after the divorce.
Appellant filed the instant lawsuit. Appellant filed a subpoena ducestecum to depose Attorney David E. Griffiths regarding the legal assistance he provided appellees in conjunction with the acquisition of the River Glen Road property. Attorney Griffiths appeared for the deposition but declined to answer questions or produce documents, claiming attorney-client privilege. The trial court denied appellant's motion to compel production and declined to conduct an in camera
inspection.
Appellees filed a motion for summary judgment. The trial court granted the motion on the grounds the statute of limitations for lawsuits brought in fraud (four years) had run. The trial court applied the discovery rule, concluding that if a fraud had been perpetrated, it was discoverable by the exercise of reasonable care from the dates the deeds were recorded. The trial court started the computation of time on the statute from the dates the deeds transferring the properties were recorded (June 22, 1993, and April 17, 1995). As the instant lawsuit was filed on June 21, 1999, the court concluded the suit was time barred. From this judgment, appellant timely filed notice of appeal, assigning the following errors:
 "1. The trial [court] erred in granting summary judgment to the appellees.
 "2. The trial court erred when it refused to order David E. Griffiths, Esq., to appear for an in camera
hearing and to provide testimony and documents requested by the appellant."
 The standard of review for summary judgment is the same for both a trial and an appellate court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Our review is de novo. Burkholder v Straughn (June 26, 1998), Trumbull App. No. 97-T-0146, unreported, at 5.
Civ.R. 56(C), which provides the standard governing motions for summary judgment, states in pertinent part that:
 "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *"
 In construing Civ.R. 56(C), the Supreme Court of Ohio has stated that the moving party bears the burden of establishing that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds, construing the evidence in favor of the nonmoving party, can come to but one conclusion and that conclusion is adverse to the party opposing the motion. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Morris v. Ohio Cas. Ins. Co. (1988), 35 Ohio St.3d 45, 46-47.
The application of the statute of limitations is the key issue in the instant appeal. The discovery rule set forth in R.C. 2305.09(D) is applicable to claims founded in fraud. Investors REIT One v. Jacobs
(1989), 46 Ohio St.3d 176, 182. "The discovery rule operates to extend the time in which a party may file a complaint. Generally, the discovery rule states that the statute of limitations does not begin to run until the plaintiff discovered, or through the exercise of reasonable diligence, should have discovered, the complained of injury." Smith v.Rudler (Aug. 13, 1993), Ashtabula App. No. 92-A-1753, unreported, at 4, citing Investors REIT One, supra, at 179. Thus, "[a] cause of action for fraud or conversion accrues either when the fraud is discovered, or in the exercise of reasonable diligence, the fraud should have been discovered." Stokes v. Berick (Dec. 23, 1999), Lake App. No. 98-L-094, unreported, at 11, citing Investors REIT One, supra, paragraph 2b of the syllabus.
Generally, the determination of when a plaintiff reasonably should have discovered the perpetration of a fraud necessarily involves questions of fact that would preclude resolution of the matter by summary judgment. See Hamilton v. Ohio Savings Bank (1994), 70 Ohio St.3d 137, 140;Investors REIT One, supra, at 182. However, this court has upheld a grant of summary judgment to a defendant in a similar case. See Stokesv. Berick (Dec. 23, 1999), Lake App. No. 98-L-094, unreported. InStokes, the plaintiff had sent a letter literally accusing the defendant of fraud, but subsequently did nothing to pursue the allegation until after the statute of limitations had run. It, therefore, presented a very clear indication that the plaintiff was on notice of the alleged fraud.
The instant case does not present such clarity. When determining whether the exercise of reasonable diligence should have discovered a case of fraud, the relevant inquiry is whether the facts known "`would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry * * *.'" Hambleton v. R.G. Barry Corp. (1984),12 Ohio St.3d 179, 181, quoting Schofield v. Cleveland Trust Co. (1948),149 Ohio St. 133, 142.
Appellees argue that appellant was, in fact, on notice of the fraud during the divorce proceedings. The record reveals that appellant may have believed at that time that Bruno had an interest in the properties. Consequently, inquiries were made during the depositions. At the least, Bruno concealed his interest in the River Glen Road property. However, further inquiry by searching the public records would not, and could not, have revealed his interest at that time as the deed was not recorded. In fact, such an inquiry would have supported Bruno's contention that he did not have an interest in the properties.
Aside from the two properties at issue in this case, Bruno owned a number of other properties and had substantial financial interests. Whether a fair and prudent person, using ordinary care and thoughtfulness, would have continued checking the public records after the divorce was final is a question of fact that is inappropriate for resolution by summary judgment. Appellant's assignment of error has merit.
In appellant's second assignment of error, she argues the trial court erred when it denied her motion to compel discovery and the production of documents by Attorney Griffiths. Appellant sought an in camera hearing on the matter. Attorney Griffiths had asserted the attorney-client privilege in preventing this discovery.
A communication is excepted from the attorney-client privilege if it is undertaken for the purpose of committing or continuing a crime or fraud.State ex rel. Nix v. Cleveland (1998), 83 Ohio St.3d 379, 383-384, citingUnited States v. Collis (C.A.6, 1997), 128 F.3d 313, 321. "A party invoking the * * * fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a * * * fraud has been committed and that the communications were in furtherance of the * * * fraud." Nix, supra, at 384, citing United States v. Jacobs
(C.A.2, 1997), 117 F.3d 82, 87.
Appellant has made a sufficient showing. Bruno denied he had an interest in the River Glen Road property during the course of the divorce proceedings. In fact, he had engaged the services of Attorney Griffiths for the purpose of preparing a deed conveying him the entire property. Appellant's assignment of error has merit.
The judgment of the trial court is reversed on both assignments of error, and the matter is remanded for proceedings consistent with this opinion.
FORD, J., concurs, CHRISTLEY, J., dissents with Dissenting Opinion.
[1] In the original complaint, Kristine's name was misspelled as "Christine."